152 N.J. Super. 371 (1977)
377 A.2d 1234
RANDOLPH H. KOCSE, PLAINTIFF,
v.
LIBERTY MUTUAL INSURANCE COMPANY, VIRGINIA MC NULTY, GIOCCHINO T. CACI, A/K/A JACK T. CACI, ANGELA CACI, AND JACQUELINE CACI, AN INFANT BY HER GUARDIAN AD LITEM, ANGELA CACI, DEFENDANTS, AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
ALLSTATE INSURANCE CO., MARK CACI, AN INFANT BY HIS GUARDIAN AD LITEM, ANGELA CACI, MICHAEL FIORE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FRANCESCO FIORE, DECEASED, AND MICHAEL FIORE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF LOUISE FIORE, DECEASED, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 4, 1977.
*373 Mr. Malcolm Blum for plaintiff Randolph Kocse (Messrs. Carlton and Blum, attorneys).
Mr. Frank R. Cinquina for defendant and third-party plaintiff Liberty Mutual Insurance Co. (Messrs. Schwartz and Andolino, attorneys).
Mr. David A. Waks for defendant Giocchino T. Caci (Messrs. Isadore & David A. Waks, attorneys).
Mr. Nickolas E. Nasuta for defendant Virginia McNulty (Mr. Robert J. Inglima, attorney).
Mr. Charles Rodgers for defendants Angela Caci and Jacqueline Caci, an infant by her guardian ad litem, Angela Caci; for third-party defendants Mark Caci, an infant by his guardian ad litem, Angela Caci, and Michael Fiore, general administrator ad prosequendum of the estates of Francesco Fiore and Louise Fiore (Messrs. Breslin and Breslin, attorneys).
Mr. Rocco L. D'Ambrosio for third-party defendant Allstate Insurance Co. (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
MONAGHAN, J.D.C., Temporarily Assigned.
This is basically a declaratory judgment action brought to compel an insurance company to indemnify and/or defend its insured against certain automobile negligence actions, now pending the outcome of this case. The insurer, Liberty Mutual *374 Insurance Company (Liberty), had contended that the accident in question did not fall within the coverage provided by the automobile liability policy. Upon earlier motions for summary judgment, this court found that the policy did provide coverage. The present motions for summary judgment raise the unique issue of whether punitive damages may be assessed against Liberty. The court has already awarded counsel fees.
This action arose from an automobile accident which occurred in Paramus, New Jersey, in September, 1974. The accident resulted in two deaths and injuries to six other individuals when the vehicle carrying the parties Caci and Fiore was struck by the automobile owned by Virginia McNulty and operated by her fiance, Randolph Kocse. The accident was reported to Allstate Insurance Company (Allstate), the insurer for the McNulty vehicle, as well as to Liberty, which had issued a comprehensive family automobile liability policy to Kocse's parents. Allstate has since tendered to the injured parties the sum of $300,000, the total coverage provided by its policy. However, with respect to the policy issued by Liberty, there has been a dispute as to whether the family policy covered the accident in question.
When notification of the accident had been received by Liberty in mid-October 1974 the company initially relied on the investigation being conducted by Allstate, the primary insurer. This was supplemented by some direct investigatory work by Liberty, most of which pertained to Kocse's PIP (no fault insurance personal injury protection coverage, N.J.S.A. 39:6A-4) claims. In November of that same year Liberty paid about $1,500 in medical expenses on Kocse's behalf, and by the following January it notified him that his lost wages, less temporary disability benefits, would also be paid (amounting to about $150). At that time Liberty received a letter from the attorney of one of the injured parties, advising the insurer of its possible liability as an excess carrier. While Liberty certainly had been apprised of the seriousness of the injuries caused by the accident *375 and of the possible secondary liability, apparently it was not until then that it first questioned the coverage of the accident under its policy with Kocse's parents. As a result of that letter Liberty sought to determine whether Kocse was a resident of his parents' household; why he was driving the McNulty auto at the time of the accident; how often he drove it; whether he had regular use of the automobile; whether he owned his own car; and other questions relating to coverage as well as to the happening of the accident itself. On January 29, 1975 a tape-recorded interview with Kocse was conducted by Liberty which, among other things, revealed that the McNulty car had been originally owned by him; that he had sold the car to McNulty, his fiancee, in April 1974; that at least one of his reasons for the transfer was that it would save him the cost of paying high insurance rates, and that after the transfer he still had liberal driving privileges of the car. Based on a provision which excluded coverage for persons operating a nonowned automobile "furnished" for their "regular use," these factors indicated to Liberty that there was a possibility that the accident might not come within the policy coverage.
Following the interview Liberty continued its investigation with an emphasis on the coverage question. Upon transcription of the recorded testimony and a review of the case in March, the company deemed it necessary to contact Kocse again for further information. A subsequent meeting with him in April disclosed more of the details of the sale of the automobile to McNulty, including the fact that the car was sold to her for no consideration. Concluding that Kocse was operating a nonowned automobile furnished for his regular use, Liberty disclaimed coverage in early May 1975. As indicated above, this court has already determined that this conclusion was incorrect and that the policy did, in fact, provide coverage. Therefore, Liberty's conduct need only be examined with respect to the punitive damages issue.
The general rule regarding punitive damages was adequately stated in the recent case of Sandler v. Lawn-A-Mat *376 Chem. & Equip. Corp., 141 N.J. Super. 437 (App. Div. 1976), certif. denied 71 N.J. 503 (1976), where it was said that punitive damages are usually restricted to actions arising out of tortious conduct. However, the conduct must be more than merely tortious; it must be done maliciously or with willful and wanton disregard of the rights of another, Di Giovanni v. Pessel, 55 N.J. 188 (1970); Berg v. Reaction Motors Div., 37 N.J. 396 (1962); La Bruno v. Lawrence, 64 N.J. Super. 570 (App. Div. 1960), certif. denied 34 N.J. 323 (1961). The restriction of such damages to tort actions obviously means that punitive damages will not generally be available in contract actions. 22 Am. Jur.2d, Damages, § 245 (1965); 5 Corbin on Contracts, § 1077 (1964); 25 C.J.S. Damages § 120 (1966); McCormick, Law of Damages, § 81 at 286 (1935). Yet, this rule, as with most general rules, is not without its exceptions. Punitive damages have been awarded in contract actions where there was a special relationship existing between the parties or a duty imposed upon the wrongdoer. Sandler v. Lawn-A-Mat Chem. & Equip. Corp., supra 141 N.J. Super. at 449, 451. Such "exceptional circumstances" include the breach of marriage contract situations, 12 Am. Jur.2d, Breach of Promise, §§ 31, 32 (1964); Annotation, "Measure and elements for breach of contract to marry," 73 A.L.R.2d 553 (1960); 11 C.J.S. Breach of Marriage Promise § 45 (1938); a bank's failure to honor its depositor's checks, 10 Am. Jur.2d, Banks, § 576 (1963); 5 Corbin, op. cit. at 444, and oppressive conduct by public transportation carriers and other public service companies towards their patrons, 5 Corbin, op. cit. at 443-44; C. McCormick, supra at 288-89. In a similar fashion, a breach of the fiduciary relationship existing between a seller and real estate broker, Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528 (1967); Silverman v. Bresnahan, 35 N.J. Super. 390 (App. Div. 1955), may give rise to the awarding of punitive damages under certain circumstances. Security Corp. v. Lehman Associates, Inc., 108 N.J. *377 Super. 137 (App. Div. 1970); Brown v. Coates, 102 U.S. App. D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943 (D.C. Cir.1958); 12 Am. Jur.2d, Brokers, § 83 (1964); Annotation, "Right of principal to recover punitive damages for agents' or brokers' breach of duty," 67 A.L.R.2d 952 (1959).
Turning to the specific contract in question, it would appear that the courts are divided as to whether the general prohibition against punitive damages in contract actions applies to disputes involving insurance policies. 20 Appleman, Insurance Law and Practice § 11255 (1963, Supp. 1977); Annotation "Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts," 47 A.L.R.3d 314, 339-48 (1973). Some courts have taken the more traditional view that insurance policies, being contractual in nature, may not give rise to punitive damages upon their breach. Cassady v. United Ins. Co. of America, 370 F. Supp. 388 (D. Ark. 1974); MacDonald v. Penn. Mut. Life Ins. Co., 276 So.2d 232 (Fla. D. Ct. App. 1973); Wallace v. Prudential Ins. Co. of America, 12 Ill. App.3d 623, 299 N.E.2d 344 (App. Ct. 1973); General Acc. Fire & Life Assur. Corp. v. Judd, 400 S.W.2d 685 (Ky. Ct. App. 1966); King v. Ins. Co. of North America, 273 N.C. 396, 159 S.E.2d 891 (Sup. Ct. 1968). Other cases have recognized this general rule but have permitted such damages to be awarded if the insurer's breach of contractual obligation assumed the character of a tort. McIntosh v. Aetna Life Ins. Co., 268 A.2d 518 (D.C. Ct. App. 1970); Export Ins. Co. v. Herrera, 426 S.W.2d 895 (Tex. Civ. App. 1968); see Richardson v. Employers Liab. Assur. Corp., 25 Cal. App. 3d 232, 102 Cal. Rptr. 547 (D. Ct. App. 1972); Fletcher v. Western National Life Ins. Co., 10 Cal. App.3d 376, 89 Cal. Rptr. 78 (D. Ct. App. 1970), Davis v. National Pioneer Ins. Co., 515 P.2d 580 (Okl. Ct. App. 1973). Still other decisions have held that the breach of an insurance contract, when accompanied by malicious, fraudulent or willful and wanton *378 acts on the part of the insurer, will subject the insurer to liability for punitive damages. Rex Ins. Co. v. Baldwin, 323 N.E.2d 270 (Ind. Ct. App. 1975); Vernon Fire & Cas. Ins. Co. v. Sharp, 316 N.E.2d 381 (Ind. Ct. App. 1974); Wright v. Public Savings Life Ins. Co., 262 S.C. 285, 204 S.E.2d 57 (Sup. Ct. 1974); State Farm General Ins. Co. v. Clifton, 86 N.M. 757, 527 P.2d 798 (Sup. Ct. 1974).
While it can hardly be said that these cases, by themselves, exhibit any trend as to the awarding of punitive damages in insurance cases, it is true that the very existence of some decisions in granting such damages in this area is reflective of a general movement towards making punitive damages more easily obtainable in contract litigation. Miner, "Expanding Availability of Punitive Damages in Contract Actions," 8 Ind. L. Rev. 668 (1975). The cases of Sandler v. Lawn-A-Mat Chem. & Equip. Corp., supra, and Security Corp. v. Lehman Associates, Inc., supra, indicate that New Jersey may be following this trend, at least where there is some form of special relationship existing between the parties. Such relationships surely would include the fiduciary relationship which has been held to exist between an insurer and its insured. Rova Farms Resort Inc. v. Investors Ins. Co. of America, 65 N.J. 474 (1974); see Bowers v. Camden Fire Ins. Ass'n, 51 N.J. 62 (1968) Radio Taxi Service, Inc. v. Lincoln Mut. Ins. Co., 31 N.J. 299 (1960). However, the extent to which such a relationship exists between these parties has not been defined.
Our Supreme Court, in Rova Farms, supra, had only been dealing with the settlement area of insurance policies when it held that an insurer had a fiduciary obligation towards its insured. The court grounded its decision on the fact that by virtue of the insurance policy terms proscribing the insured from settling in his own behalf, the insurer had made itself the agent of the insured in this respect. 65 N.J. at 492.
It is questionable whether such reasoning could be applied to all of the dealings between the parties. The mere *379 presence of a fiduciary duty regarding one aspect of the insurance contract does not necessarily require that such a duty govern all aspects of the agreement. See Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. D. Ct. App. 1973). Certainly, an insurer's task of determining whether the insurance policy provided coverage of an accident cannot be deemed to give rise to such a duty on the part of the insurer. The parties, in this respect, are merely dealing with one another as they would in a normal contractual situation. They are not acting as principal and agent. Thus, the company is only required to fulfill the ordinary contractual duties imposed by the insurance agreement. Of course, where the insurer refuses to defend an action against the insured based on a claim actually within the policy coverage, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages resulting to him as a result of such breach. See Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970); Gerhardt v. Continental Ins. Companies, 48 N.J. 291 (1966); 7 Am. Jur.2d, Automobile Insurance, § 166 (1963); 44 Am. Jur.2d, Insurance, § 1546 (1969).
Despite this absence of a fiduciary duty on the part of the insurer, there is still the possibility that punitive damages might be awardable under certain circumstances. The court in Sandler v. Lawn-A-Mat Chem. & Equip. Corp., supra, indicated as much when it said:
We do not mean to conclude * * * that the right to punitive damages should simply turn upon the form of action involved, namely, whether it is designated as a tort rather than a contract. There may arise a case involving such an aggravated set of facts that punitive damages might be appropriate regardless of the contract form of the cause of action and even though it may be beyond the scope of the recognized exceptions in the adjudicated cases. [at 451]
However, an examination of the facts of this case does not reveal such an aggravated situation as to warrant the assessment of punitive damages.
Kocse and the injured third parties have contended that Liberty is liable for punitive damages based on the allegation *380 that Liberty took the recorded statement of Kocse with a view toward determining the issue of coverage and did not advise Kocse of that fact, nor did it advise Kocse that he had a right to counsel. They assert that Liberty's principal purpose in taking the statement was to obtain facts upon which a disclaimer of coverage could be made rather than eliciting facts relevant to defending Kocse against the pending negligence claims.
In support of these contentions they point out that for the first three months following the report of the accident Liberty did little by way of investigating the accident; that its dealings with Kocse regarding his PIP claims led him reasonably to believe that Liberty considered him to be an insured under the family policy; that Liberty's coverage investigation did not commence until a letter had been received from the attorney of one of the injured parties, and that Liberty's failure to advise Kocse of the coverage issue and of his right to counsel were in derogation of its special duty of good faith and fair dealing owed to its insured. With regard to this latter point, a Liberty claims-education publication indicates that it is the usual company practice not to interview any "claimant after he is represented by an attorney." Liberty's adversaries argue that the special relationship between insurer and insured requires that such a right also be accorded an insured during coverage investigation. In short, it is asserted that Liberty acted selfishly and in its own interest, without regard to the rights of Kocse, and without regard to the rights of the injured third parties. Such conduct, it is contended, warrants the awarding of punitive damages.
While it is true that Liberty did not initiate immediate investigatory efforts regarding the accident and that it was on early notice of the seriousness of the injuries resulting therefrom, it must be remembered that Liberty was only secondarily liable and an investigation was already being conducted by Allstate, which was relaying the information to Liberty. There was no need for Liberty to duplicate Allstate's *381 efforts. Therefore, the only area where Liberty took direct action was with regard to the PIP claims of Kocse. Along with the soliciting of information from Allstate, this may be enough to indicate that Liberty was treating Kocse as its insured during the first three months of investigation. However, upon the realization, prompted at least in part by the attorney's letter, that its potential liability as an excess carrier might become a reality, Liberty took steps to investigate factors surrounding the coverage question. While this delay in examining this question might be enough to hold that Liberty was estopped from claiming or had waived any right to claim noncoverage, or that its delay might be characterized as a neglect of its duties, it can hardly be said that such actions precluded Liberty from examining the coverage question. Liberty had every right to investigate this question before performing further inquiry into the liability and damage aspects of the accident. There is no obligation for an insurer to defend an action where an accident is outside of the coverage provided by the policy. Hackensack Water Co. v. General Acc. Fire & Life Assur. Corp., 84 N.J. Super. 479 (App. Div. 1964); Deodato v. Hartford Ins. Co., 143 N.J. Super. 396 (Law Div. 1976).
The taking of the statements from Kocse does not change the situation. Liberty's right to investigate the coverage question included the taking of statements from its insured. Liberty had no obligation to advise Kocse that his statements might form the basis for a disclaimer or of any right to counsel. To require such prerequisites would work against the insurer's obtainment of truthful answers from the insured and would lead to the imposition of greater liabilities on insurance companies that would ultimately be reflected in higher insurance rates. Liberty's conduct, while there is no doubt that it adversely affected the interests of Kocse and the other third parties, cannot be characterized as malicious in nature or in willful and wanton disregard of the rights of these parties as to warrant the assessment of punitive damages against Liberty.
*382 For the reasons stated above, Liberty's motion for summary judgment on the punitive damages issue will be granted and the like motions in opposition will be denied.