447 So.2d 998 (1984)
IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
Elease WORTHY, Appellee/Cross-Appellant.
No. 83-487.
District Court of Appeal of Florida, Fifth District.
March 22, 1984.
*999 H. David Luff of Sanders, McEwan, Mims & McDonald, Orlando, for appellant/cross-appellee.
Elizabeth J. Gulden of Gulden, Heller & Sheaffer, and Marcia K. Lippincott, Orlando, for appellee/cross-appellant.
COWART, Judge.
This is an appeal from a judgment based on a jury verdict awarding punitive damages against a PIP insurer for allegedly fraudulently obtaining a release from an insured.
Appellee, hereinafter called the insured, sustained personal injuries in a motor vehicle accident caused by a negligent tortfeasor. The insured had personal injury protection coverage[1] under a no-fault policy with appellant, Iowa National Mutual Insurance Company, hereinafter called the insurer or PIP insurer. The tortfeasor negligently causing the insured's injuries had liability coverage with State Farm. The insured was admitted to a hospital for treatment of a low back injury resulting from the accident and while there discovered that she had a cancerous condition which was successfully treated by surgery. The insured submitted all of her medical bills and a lost wage statement to her insurer. The insurer undertook to separate the medical bills and lost wages attributable to the back injury, for a portion of which the PIP insurer was liable, from those attributable to the cancer treatment, for which the PIP insurer was not liable. The insurer's adjuster met with the insured and it was agreed that, to settle the claim, the insurer would pay eighty percent of all medical expenses[2] incurred through a certain date when the cancer was discovered and sixty percent of the insured's lost wages.[3] The insured stated that her back was still hurting. The adjuster offered an additional $200 to cover future medical expenses and offered two checks; one check for $645.84 for lost wages; the other for $1,421.95 for medical expenses including the $200 for future medical expenses. At this point the conversation between the insurer's adjuster and the insured is disputed and has become the issue of the trial from which this appeal is taken. Before the insured accepted the insurer's checks and signed a release, the insured, understanding she was making a binding settlement with her PIP insurer, asked the adjuster what she should do if her back continued to hurt. According to the insured the adjuster replied that the insurer should "take it up with State Farm," the at-fault insurer.[4] The insured signed the release *1000 and accepted the checks and directed her doctor to send all medical bills to State Farm. Subsequently State Farm sent the insured a letter denying it insured anyone involved in the accident in which the insured was injured. The insured consulted an attorney who presented the insured's personal injury claim to, and negotiated a $6,000 recovery from, State Farm. The insured's attorney then presented to the PIP insurer a claim for $280[5] for medical expenses incurred after the settlement date. The PIP insurer declined to pay because of the release. The insured then sued her PIP insurer in four counts, count two claiming punitive damages and alleging that the insurer fraudulently induced the insured to sign the release by misrepresenting to the insured that State Farm "was the responsible party for any medical expense that was incurred in excess of $200." The insured testified that State Farm paid none of her medical expense.[6] The trial court admitted into evidence the letter from State Farm denying liability but granted the insured's pretrial motion in limine and prohibited the insurer at trial from making any reference to the insured's tort recovery of the $6,000 from State Farm. The jury found the insurer fraudulently induced the insured to sign the release and awarded $24.00[7] compensatory damages and $60,000 punitive damages. The insurer appeals.
An order in limine should only be used as a shield and never to gag the truth and permit other evidence to mislead the jury because the limine order prevents such evidence from being rebutted.[8] We agree with the insurer that the order in limine was erroneous and that the insured's testimony, together with the letter from State Farm and the order in limine were used[9] to give the jury an erroneous impression that the adjuster had no reason to refer the insured to State Farm because that liability carrier insured no person involved in the accident in which the insured was injured, that State Farm was not legally liable to *1001 the insured in any manner and that State Farm never paid the insured anything. Nevertheless, because of our disposition of this case, those matters are moot.
The original 1972 "no-fault" statutes provided in section 627.736(1), Florida Statutes, for PIP benefits of 100 percent of medical expenses and 100 percent of lost earnings up to a limit of coverage of $5,000. Section 627.737, Florida Statutes, gave exemption from tort liability to the extent of the PIP benefits payable under section 627.736(1), Florida Statutes, and provided that if certain thresholds relating to permanency and seriousness were met the injured party could recover from the tortfeasor for pain, suffering, mental anguish and inconvenience. In upholding the constitutionality of these first statutes, the Florida Supreme Court in Lasky v. State Farm Insurance Company, 296 So.2d 9, 14 (Fla. 1974), stated:
Thus the insured party will receive such benefits as payment of his medical expenses and compensation for any loss of income and loss of earning capacity under the insurance policy he is required by law to maintain, up to the applicable policy limits, and may bring suit to recover such of these damages as are in excess of his applicable policy limits. (emphasis supplied)
Thereafter the legislature in 1977 reduced PIP benefits to 80 percent of medical expenses and 60 percent of lost income and, in 1979, raised PIP coverage from $5,000 to $10,000. When the constitutionality of these amended statutes was questioned the supreme court in Chapman v. Dillon, 415 So.2d 12, 18 (Fla. 1982), stated:
Under the new provisions the injured party still recovers most of his out-of-pocket expenses from his own insurer and is allowed to bring suit for the remainder. (emphasis supplied)
Section 627.737(1), Florida Statutes, undertakes to exempt a tortfeasor from tort liability for damages because of bodily injury caused by a motor vehicle only "to the extent that benefits described in s. 627.736(1) are payable for such injury, or would be payable but for any [authorized] exclusion... ." Therefore, under the statutes cited and Lasky and Chapman, without meeting the thresholds in section 627.737(2), Florida Statutes, the tortfeasor and his liability carrier, here State Farm, is liable to the injured party for the 20 percent of medical expenses not payable under the PIP coverages provided by section 627.736(1)(a) and the 40 percent of lost gross income and earning capacity not payable under the PIP coverage provided by section 627.736(1)(b), Florida Statutes, and for 100 percent of those damages as exceeds the applicable policy limits. Of course, after meeting the thresholds of section 627.737(2), Florida Statutes, the injured party may also recover in tort from the tortfeasor and his liability carrier for all pain, suffering, mental anguish and inconvenience resulting from bodily injury caused by the negligent operation of a motor vehicle.
While we cannot say that the parties negotiating the $6,000 settlement with State Farm intended for it to include payment in settlement of the liability of State Farm for part of the medical expense and lost earnings suffered by the insured, if $1,221.95 represented 80 percent of her medical expenses (other than the subsequent $280 of medical expense) and $645.84 represented 60 percent of her lost earnings, we can say that, subject to adjustment for comparative negligence, if any, the $6,000 settlement should have included $361.49, representing 20 percent of her medical expenses (including the $280) and $430.56, representing 40 percent of her lost earnings, being a total of $792.05 for which State Farm was responsible for the share of the insured's medical expense and lost earnings for which the tortfeasor was legally liable.
For these reasons, whether the insured's question to the adjuster is construed to relate to payment of medical expenses, as the insured's counsel contends, or to the possibility of recovery for pain and suffering resulting from a significant and permanent injury under section 627.737(2), Florida Statutes, as the PIP insurer suggests, the suggestion of the insurer's adjuster for *1002 the insured to "take it up with State Farm" was fair and appropriate because of State Farm's legal liability and was reasonable in reality and fact as shown by the $6,000 paid by State Farm to the insured, apparently as a direct result of the insured's reaction to the adjuster's very remark which was the basis for this law action. Accordingly, the evidence as to the insured's ambiguous query and the adjuster's reply, taken in the light most favorable to the insured and according to the insured's own testimony, was insufficient as a matter of law as the factual basis for the jury to infer that the adjuster's statement was intentionally false and misleading and fraudulent.[10] We hold that the trial court should have granted the insurer's motion for a directed verdict.[11]
We approve the trial court's dismissal of the insured's count alleging constructive fraud since in the context of this case there was no fiduciary relationship between the insurer and its insured. See Smith v. Standard Guaranty Insurance Co., 435 So.2d 848 (Fla. 2d DCA 1983), review denied, 441 So.2d 633 (Fla. 1983); Shupack v. Allstate Insurance Co., 367 So.2d 1103 (Fla. 3d DCA 1979); Baxter v. Royal Indemnity Company, 285 So.2d 652 (Fla. 1st DCA 1973), cert. dismd., 317 So.2d 725 (Fla. 1975); Kocse v. Liberty Mutual Insurance Co., 152 N.J. Super. 371, 377 A.2d 1234, 1237-1238 (N.J.Law Div. 1977).
We reverse the judgment and remand for entry of judgment in favor of the insurer.
REVERSED AND REMANDED.
SHARP, J., and WOLFMAN, STANLEY, Associate Judge, concur.
NOTES
[1] See § 627.736(1), Fla. Stat. (1983).
[2] See § 627.736(1)(a), Fla. Stat. (1983).
[3] See § 627.736(1)(b), Fla. Stat. (1983).
[4] At trial on the issue in question the insured testified as follows:

Q. Please tell the jury what you said before you signed the paper about medical bills in the future, or whoever started the conversation.
A. Well I did. I asked her: Suppose my back would hurt fight [sic] off? And she said this, that I sign the paper, that they couldn't pay me any more money and to take it up  I discussed it about State Farm myself with her. And she said take it up with State Farm ... (emphasis supplied)
And again:
... And I asked her then: Suppose my back continued to hurt? And she said I'd have to take it to State Farm. Because I had told her about State Farm, I guess ... (emphasis supplied).
[5] Based on Garrett v. Morris Kirschman and Company, Inc., 336 So.2d 566 (Fla. 1976), we reject the insurer's argument that it was harmful error for the trial court to admit into evidence a bill for $40.00 from one Doctor Brown without requiring a predicate as to its reasonableness or necessity.
[6] During direct examination the insured testified as follows:

Q. Mrs. Worthy, did you receive a response or correspondence from State Farm after you had indicated to your doctor to forward any bills to them?
A. No. No, I did not.
Q. Did you receive a letter from State Farm?
A. Yes, I did.
Q. Did State Farm pay any of your medical expenses when you sent them the bill?
A. No, no, they did not.
[7] Although a jury verdict need not directly relate to the facts, and often does not, the $24.00 compensatory damages may result from subtracting the $200 paid by the PIP insurer from 80% of the rejected claim for $280 of post-settlement medical expense. Eighty percent of $280 equals $224; $224 minus $200 equals $24.00.
[8] Even a Miranda violating statement can be used for rebuttal in a criminal case, see Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
[9] During closing argument counsel for the insured exploited the misimpression that State Farm's letter concluded, adversely, the insured's claim against State Farm:

... and Mrs. Worthy [the insured] asked a question, simply: What do I do, Mrs. Bentsen [the adjuster], if two hundred dollars isn't enough. "Oh, you take that up with State Farm." And Mrs. Worthy said: Oh, fine. And so Mrs. Worthy testified she believed that. In fact, she carried out those instructions and got a letter back from State Farm and it said, "not us." (emphasis supplied)
And again:
And she [Mrs. Worthy] said to nice Mrs. Bentsen [the adjuster]. She said: "What do we do?" "Take that up with State Farm." Thank you. When the bill came she said, "Doctor Lee, you have to write to State Farm because they're the one." And State Farm wrote back saying, no. (emphasis supplied)
[10] Without being properly advised as to the law (i.e., as to State Farm's liability to the insured for the portion of the insured's medical expenses and lost earnings not paid by the PIP insurer) and given the impression that State Farm was not legally liable and that the insured recovered nothing from State Farm, and not allowed to learn the true facts about State Farm paying the insured $6,000, the jury in this case was mislead, not the insured.
[11] Although we have not relied on it in making a decision in this case the principle of law in Life Ins. Co. of North America v. Del Aguila, 417 So.2d 651 (Fla. 1982), might have been a sufficient independent basis for the trial court to have directed a verdict as to the liability of the PIP insurer for punitive damages in this case. Aside from the fact that we find the evidence as to the adjuster's alleged intent to defraud insufficient to go to the jury we likewise find insufficient proof of fault on the part of the insurer, as principal, to be vicariously liable in punitive damages under the doctrine of respondeat superior for the acts of the adjuster. Mere use of the release, allegedly procured by fraud, would not constitute ratification in absence of knowledge of the (alleged) fraudulent inducement itself.