**W.A. WRIGHT, INC. and A.C. Excavating, Inc., Appellees,**

v.

**KDI SYLVAN POOLS, INC., Appellant.**

No. 83–5648.

United States Court of Appeals, Third Circuit.

Argued June 15, 1984.

Decided Oct. 23, 1984.

Clarkson S. Fisher, Jr. (argued), Evans, Koelzer, Osborne, Kreizman & Bassi, Red Bank, N.J., for appellant.

John A. Yacovelle (argued), Somerdale, N.J., for appellees.

Before SEITZ, Circuit Judge, STEWART, Associate Justice (Retired),* and ADAMS, Circuit Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

KDI Sylvan Pools, Inc., ("Sylvan") appeals from a final order of the district court entering judgment in favor of plaintiffs W.A. Wright, Inc. ("Wright Inc.") and A.C. Excavating, Inc. ("A.C. Excavating") after a jury trial. Sylvan further appeals an order of the district court denying Sylvan's motion for a new trial and granting plaintiffs' motion for an assessment of prejudgment interest. This court has jurisdiction under 28 U.S.C. § 1291.

### I.

Defendant Sylvan is engaged in the business of selling and constructing residential inground swimming pools. Plaintiffs Wright Inc. and A.C. Excavating, both controlled by William and Patricia Wright, perform construction tasks related to the installation of such pools.

On February 14, 1980, Sylvan entered into separate subcontracting agreements with Wright Inc. and A.C. Excavating.[1] In the first of these agreements, Sylvan agreed to recommend Wright Inc. for all deck and terrace work on pools sold in Sylvan's Cherry Hill office during the 1980 season. The second agreement provided that A.C. Excavating would perform all excavation work on those pools. The latter contract estimated that "between 85 to 100 digs" would be commenced in 1980. Both agreements stipulated that either party could terminate the contracts for good cause.

Relations between the parties deteriorated, and Sylvan terminated the contracts in May of 1980, several months prior to the end of the season. Plaintiffs then filed suit in state court alleging breach of contract. The case was removed to federal court under the court's diversity jurisdiction. A jury trial was held in which the district court required the jury to respond to special interrogatories relating to the issues of liability, compensatory damages and punitive damages. The jury found that Sylvan had terminated the two subcontracting agreements without good cause. Wright Inc. received compensatory damages in the amount of $86,768.00, while A.C. Excavating received $28,396.00. Punitive damages of $7,500.00 were awarded to each of the plaintiff companies.

Prior to the district court's entry of judgment, plaintiffs moved for an assessment of prejudgment interest on the awards of compensatory damages. Also before the

---

* The Honorable Potter Stewart, Associate Justice (retired) of the Supreme Court of the United States, sitting by designation.

1. At the time the subcontracting agreement was made, A.C. Excavating was operating under the name of Wrightway Excavation Co., Inc.

court was Sylvan's motion for a new trial. Applying New Jersey state law, the court held that equitable considerations supported an award of prejudgment interest. Interest was awarded for the period between November 30, 1980, the close of the 1980 season, and May 23, 1983, the date of entry of judgment. The motion for a new trial was denied. *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 569 F.Supp. 589 (D.N.J. 1983).

The arguments raised by Sylvan in its motion for a new trial are revived in this appeal. Sylvan asserts that the district court improperly granted plaintiffs leave to amend their complaint after the close of their case at trial. The amendment, which was added solely to assert a basis for the imposition of punitive damages, alleged that Sylvan had entered into the subcontracting agreements with knowledge that they violated an earlier consent decree. This decree had been entered into in an unrelated action brought against Sylvan by a competitor, Anthony Industries, Inc. ("Anthony"). Under the terms of the decree, Sylvan and Anthony were prohibited from interfering with each other's business relationships with any contractors or subcontractors.

Sylvan argues that New Jersey law [2] prohibits an award of punitive damages in this case and therefore that the jury should not have been instructed on the issue of such damages. The erroneous instruction, Sylvan further maintains, tainted the compensatory damage awards. Finally, Sylvan alleges that the district court abused its discretion in awarding prejudgment interest.

## II.

### A. *Punitive Damages*

Sylvan argues that, in the absence of a fiduciary relationship between the parties, New Jersey law prohibits an award of punitive damages in breach of contract actions. There are apparently no state supreme court decisions addressing this question. Thus, the task of the district court under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), was to make an informed prediction as to how the New Jersey Supreme Court would rule on this issue if this case were before it. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). This court conducts a plenary review of the district court's prediction. *Compagnie des Bauxites de Guinee v. Insurance Corp. of North America*, 724 F.2d 369 (3d Cir.1983).

Punitive damages have traditionally been reserved as punishment for wrongdoers who commit tortious acts. As the Restatement of Contracts states:

> Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.

Restatement (Second) of Contracts § 355 (1979).

■ Although several exceptions have been carved out of the general rule that punitive damages are unavailable in breach of contract actions, *see e.g., Coryell v. Colbaugh*, 1 N.J.L. 90 (N.J.Sup.Ct.1791) (punitive damages allowed for breach of promise to marry); *Security Corp. v. Lehman Associates, Inc.*, 108 N.J.Super. 137, 260 A.2d 248 (App.Div.1970) (breach of fiduciary relationship between a seller and real estate broker), these exceptions have been premised upon the finding of a special relationship between the parties. These special relationships impose a duty of trust upon the contracting entities. It is the breach of this trust, rather than the breach of the contract, which gives rise to an award of punitive damages.

There is no such special relationship in this case. Nevertheless, an intermediate appellate court in New Jersey has suggested that a set of facts might be so egregious

---

2. Although the subcontracting agreements stipulated that the contracts were to be construed in accordance with Pennsylvania law, the district court applied the law of the forum state, New Jersey. The parties have not contested the application of New Jersey law either in the district court or before this court.

as to allow the jury to go beyond the recognized exceptions in awarding punitive damages. *Sandler v. Lawn-A-Mat Chemical and Equipment Corp.*, 141 N.J.Super. 437, 358 A.2d 805 (App.Div.1976). Even assuming that Sylvan's conduct in this case was egregious, we do not believe that an award of punitive damages is appropriate. There is no indication in any New Jersey Supreme Court opinion that it would create an additional exception for egregious contract breaches.

Even where a fiduciary relationship may be presumed to exist, such as in the case of the relationship between an insured and its insurance carrier, the intermediate appellate courts of New Jersey have refused to authorize punitive damage awards, stating that "[w]e see no clear indication in our current jurisprudence that our Supreme Court would sanction such a cause of action." *Garden States Community Hospital v. Watson*, 191 N.J.Super. 225, 227, 465 A.2d 1225, 1226 (App.Div.1982). Moreover, until the decision in this case, no federal district court, construing New Jersey law, had assessed punitive damages in contract actions where no special relationship existed between the parties. *See e.g., First National State Bank v. Commonwealth Federal Savings and Loan Assn.*, 455 F.Supp. 464 (D.N.J.1978), *affd.* 610 F.2d 164 (3d Cir.1980).

Recently, courts in other jurisdictions have created a new exception allowing for punitive damages in cases brought by consumers for breach of a construction contract. *Morrow v. L.A. Goldschmidt Associates, Inc.*, 126 Ill.App.3d 1089, 82 Ill.Dec. 152, 468 N.E.2d 414 (1984). The courts in these cases appear to be influenced by the unequal bargaining position of the parties and by the need to insure public safety in building construction. No such policy considerations are present in this case. At issue here are two purely commercial contracts negotiated between parties at arm's length with one another.

Plaintiffs characterize Sylvan's conduct as constituting a breach of the covenant of good faith and fair dealing. Such a cove-nant may be implied in all contractual arrangements. *Bak-A-Lum Corp. of America v. Alcoa Building Products, Inc.*, 69 N.J. 123, 351 A.2d 349 (1976). But to sanction punitive damages on such a "bad faith" theory would, it seems, allow for punitive damages whenever the contract breach was intentional. Thus, the exception urged by plaintiffs would effectively swallow the rule.

■ It is certainly true that a federal court sitting in diversity may diverge from existing precedent when there is sufficient evidence that the highest state court would be willing to entertain a change in its common law. But the federal court should proceed with great caution when the effect of its ruling would be to broaden the law beyond the point where any other court has yet ventured. While much has been written about the presumed trend toward "making punitive damages more easily obtainable in contract litigation," *Kocse v. Liberty Mutual Ins. Co.*, 152 N.J.Super. 371, 378, 377 A.2d 1234, 1237 (Law Div. 1977), we cannot assume, on such scant evidence, that the New Jersey Supreme Court would adopt such a rule with its sweeping implications. Rather, the case law suggests that the New Jersey courts have been cautious in their approach to the availability of punitive damages in contract claims. *Garden State Community Hospital v. Watson, supra.*

In upholding the jury award of punitive damages, the district court relied heavily on the language in *Sandler.* Because we are persuaded that the highest court of New Jersey would not permit an award of punitive damages for a bad faith or egregious breach of a commercial contract of the present type, we hold that the district court was not justified in relying on the *Sandler* dictum to predict New Jersey law.

### B. *Late Amendment of the Complaint*

Sylvan also maintains that plaintiffs should not have been permitted to amend their complaint because the motion to amend was untimely and prejudicial. As both plaintiffs and Sylvan acknowledge,

this amendment was essentially a claim for punitive damages. Because we have reversed the award of punitive damages, it becomes unnecessary for us to consider whether the district court abused its discretion in allowing the amendment.

### C. *Compensatory Damages*

Sylvan contends that the jury's award of compensatory damages was against the weight of the evidence. It argues that the jury verdict was based on an erroneous determination that 100 pools were sold out of Sylvan's Cherry Hill office during the 1980 season. According to Sylvan, it is "undisputed" that only 85 pools were sold during the relevant period.

■■■ A jury award of damages is not to be upset so long as there exists sufficient evidence on the record which, if accepted by the jury, would sustain the verdict. *Hourston v. Harvlan, Inc.*, 457 F.2d 1105 (3d Cir.1972). Our review of the record reveals that the evidence concerning the number of pools sold was conflicting at best. In a deposition read into the record, Sylvan's sales manager estimated that 90 pools were dug in 1980. The excavation contract between A.C. Excavating and Sylvan had anticipated that between 85 to 100 digs would be performed during the contract period. Evidence was also presented that 85 digs were commenced in 1980. In view of this conflicting evidence, we believe that it was within the province of the jury to consider all the evidence and calculate a verdict based upon a 100 pool figure.

■■■ Sylvan also argues that the compensatory damage awards were improperly influenced by the jury instruction on punitive damages. Sylvan believes that the instruction may have encouraged the jury to go beyond the proofs in assessing compensatory damages. We find this argument without merit. The special verdicts required of the jury belie the contention that the jury disregarded the distinctions between the two damage categories. Thus, we conclude that the compensatory damage awards were neither against the weight of the evidence nor tainted by the punitive damage charge.

### D. *Prejudgment Interest*

■■■ Finally, Sylvan contests the district court's order granting prejudgment interest on the compensatory damage awards. In a diversity action, whether to award prejudgment interest is a question of state law. *Jarvis v. Johnson*, 668 F.2d 740 (3d Cir.1982).

■■■ Sylvan's dispute with the district court's ruling rests with the court's characterization of the claims as liquidated. However, the rule in New Jersey is that, regardless of whether the contract claim is liquidated or not, equitable principles govern the award of prejudgment interest. *Bak-A-Lum Corp. of America v. Alcoa Building Products, Inc.*, 69 N.J. 123, 351 A.2d 349 (1976).

■■■ The district court clearly felt that the jury's award of punitive damages supported a finding that the equities favored the plaintiffs. Although we now reverse the award of punitive damages because we believe that New Jersey would not sanction such damages for a bad faith breach of contract, our holding has no effect on the district court's determination that Sylvan's actions were wrongful and egregious and thus, that equitable considerations favored an award of prejudgment interest. The jury made a specific finding that Sylvan had terminated the contracts without good cause. Here the plaintiffs have been deprived of substantial sums in lost profits because of Sylvan's breach. The Supreme Court of New Jersey has stated that an award of prejudgment interest is intended to be compensatory and is allowed to indemnify the claimant for the loss of moneys he or she would have earned had payment not been delayed. *Busik v. Levine*, 63 N.J. 351, 307 A.2d 571 (1973). We therefore hold that the district court did not abuse its discretion in awarding prejudgment interest.

### III.

We have focused our consideration on Sylvan's appeal from the district court order entering judgment against it. Sylvan also appeals the district court's denial of its motion for a new trial. This aspect of Sylvan's appeal is moot insofar as it relates to the punitive damages issue. With respect to all other issues, based on our discussion above, we hold that the district court's denial of Sylvan's motion was not an abuse of discretion.

### IV.

The judgment of the district court awarding punitive damages against KDI Sylvan Pools, Inc. will be reversed. The judgment of the district court will be affirmed in all other respects. The order of the district court denying Sylvan's motion for a new trial will be affirmed. Appellant Sylvan will bear 90 percent of the costs of this appeal and appellees will bear the remainder equally.