17286

THE STATE, Respondent, v. OTHO FAY CALDWELL and GEORGE CALDWELL, Appellants

(98 S. E. (2d) 259)

C. Y. *Brown, Esq., for Appellants,*

*Messrs. J. Allen Lambright, Solicitor, and J. Wright Nash, Assistant Solicitor,* of Spartanburg, *for Respondent,*

April 30, 1957.

STUKES, Chief Justice.

The appellants, who are brothers, were convicted of involuntary manslaughter on account of the death of a Mrs. Roberts. The evidence for the State tended to show that a little after midnight they carried Mrs. Roberts in their coupe automobile to the place of business of the Yellow Cab Company in the City of Spartanburg, and two of the cab drivers who observed them there testified as State's witnesses. One of appellants got out of the car with Mrs. Roberts and he was heard by one of the witnesses to ask her whether she wanted a cab or wanted to use the telephone. One said she was crying. When they were about 40 feet from the automobile the appellant-driver reversed it closer to them and the other appellant ran back to the car and entered it, with Mrs. Roberts closely following. She tried to enter the automobile after the door was closed against her and it was driven off at a rapid rate of speed (one witness said, "jumped off") with her still holding the door frame and handle. She fell, was struck by a rear fender or wheel and suffered injuries from which she soon died. One of the taxicab driver-witnesses for the State testified that he shouted several times at the occu-

pants of the car to stop them, in apparent effort to prevent injury to Mrs. Roberts. (An appellants' witness, another cab driver, testified that at one time one of the appellants, quoting from the testimony, "had his foot on the dash (of the automobile) like he wanted to keep her out." This witness also said, "the door opened when she fell off.")

Both appellants testified, in contradiction of the foregoing, that they did not know that Mrs. Roberts was about the car when they drove away. There was no claim by either of them that they were justifiably trying to prevent her entry into the car; they did not defend on that ground.

The police were promptly called by one of the taxicab drivers and an officer stopped the automobile of appellants within a block and arrested them before Mrs. Roberts was removed to the hospital by ambulance. The arresting officer testified that both appellants were under the influence of intoxicants and told him they had had "a few drinks."

The appellants testified that as they drove away from the scene one of them said to the other that he thought Mrs. Roberts had fallen, whereupon they went around a block and returned to the scene but did not stop although signaled to do so, which they claimed they thought was a signal to proceed. People had gathered around Mrs. Roberts who was lying in the street, but appellants denied seeing her when they passed. The police officer soon stopped and arrested them. There was testimony that the lights on appellants' car were not burning. However, the street lights were, and the taxi stand was lighted.

The appellants said that they first made the chance acquaintance of Mrs. Roberts in a beer parlor in the city where they were when she entered alone, and one of them bought beer for her. This was about nine or nine-thirty o'clock, and they remained until the place closed at a little after ten. They then took her in their automobile to a resort known as Jerry's Tavern or Green Gables, about

five miles out on the Asheville Highway, where they drank more beer and remained until around midnight. Thence they took her back to the city and to the taxi stand so that she could use a telephone or obtain a taxi. The inescapable inference from all of the evidence is that they were bent on getting rid of her there, and, cognizant of her dangerous situation, they drove hastily away with her clinging to the car in an effort to re-enter it. Surely their acts may reasonably have been found by the jury to have been negligent, at least, which was legally sufficient for the verdict of guilty of involuntary manslaughter, as will be seen hereinafter.

The first point made on appeal is the alleged error of the trial court in refusing to direct a verdict of acquittal upon the ground that the evidence showed that the proximate cause of the death of decedent, quoting from the motion, "was her own actions in grabbing the door or the door-handle, or some portion of a moving car, and but for that act on her part this accident would not have occurred". Careful review of the evidence, which is stated in substance above, is convincing that the issue was properly submitted to the jury.

Appellants have not excepted to the instructions to the jury, which included the following:

"Involuntary manslaughter is the felonious killing of a person by negligence in the use of a deadly instrumentality, such as an automobile—that is to say; such negligence in the operation of the instrumentality as was the cause, the proximate cause immediately or mediately of the death of the person. Now, negligence is the failure by way of acts of commission or omission to exercise due care—such care as a person of ordinary reason and prudence would exercise in the same circumstances. * * * I charge you, Mr. Foreman, and Gentlemen of the Jury, there is still another provision of this same statute that provides that it is unlawful for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxi-

cating liquor or narcotic drugs to drive any vehicle within the State; so you will see by the terms of the statute that it is unlawful for any person while under the influence of narcotic drugs or intoxicating liquors to drive any vehicle in the State of South Carolina. Any violation of these statutes would be negligence in itself, or negligence 'per se', or negligence as a matter of law, bearing in mind that under the influence means sufficiently under the influence as to impair the ability of such driver to operate the vehicle with reasonable care."

In *State v. Dixon,* 181 S. C. 1, 186 S. E. 531, 532, which was an automobile accident case, it was said: "There can be no question that it is the established rule in this jurisdiction that one who causes the death of another by the negligent use of a deadly weapon or instrumentality may be convicted of i n v o l u n t a r y manslaughter." Several decisions of this court have sustained verdicts in which it was implicit that an automobile is a dangerous instrumentality and within the foregoing rule. See for example, *State v. Staggs,* 186 S. C. 151, 195 S. E. 130, and other cases, some of which will be cited.

*State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825, 827, was a conviction of involuntary manslaughter in a highway accident. The following is from the opinion by the able Justice Fishburne, now retired:

"But, viewing the evidence, and the inferences which may reasonably be drawn therefrom, in its most favorable light for the State, which is the accepted position on a motion to direct a verdict—*State v. Turner,* 117 S. C. 470, 109 S. E. 119; *State v. Quinn,* 111 S. C. 174, 97 S. E. 62, 3 A. L. R. 1500,—we are of the opinion that it is of sufficient probative value to warrant its submission to the jury. The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the

jury. *State v. Roddey,* 126 S. C. 499, 120 S. E. 359; *State v. Villepigue,* 127 S. C. 392, 121 S. E. 258; *State v. Walker,* 138 S. C. 293, 136 S. E. 215. The office and function of the Court when considering a motion for a directed verdict in favor of the defendant is, not to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict. Where there is any evidence, however slight, on which the jury may justifiably find the existence or the non-existence of material facts in issue, or if the evidence is of such character that different conclusions as to such facts reasonably may be drawn therefrom, the issues should be submitted to the jury. *State v. Prince,* 165 S. C. 115, 162 S. E. 777; *State v. Gellis,* 158 S. C. 471, 155 S. E. 849; *State v. Rush,* 129 S. C. 43, 123 S. E. 765."

The subject law was exhaustively considered and discussed in the opinion by Mr. Justice Oxner in *State v. Barnett,* 218 S. C. 415, 63 S. E. (2d) 57, 61, which may now be said to be our leading case in point. It was an unsuccessful appeal from conviction of involuntary manslaughter in the operation of an automobile. Upon review of our former relevant decisions, including those which are cited above it, it was concluded that: "It is clear from the foregoing decisions that in respect to the degree of negligence necessary to establish involuntary manslaughter at common law, we have classified motor vehicles as dangerous instrumentalities and have applied the 'deadly weapon' rule, which requires only simple negligence." At the end of the opinion it was further said: "Under all the circumstances mentioned, we think the wisest policy is to adhere to the simple negligence rule in automobile homicide cases. If a change or modification is desirable, it should come from the law-making body."

The opinion in *State v. Phillips,* 226 S. C. 297, 84 S. E. (2d) 855, by Mr. Justice Taylor, cites the *Barnett case* and contains a catalog of the earlier relevant decisions. From it we quote: "From the foregoing cases, it has been determined that in this State an individual may be guilty'

of involuntary manslaughter when death arises out of the negligent operation of a motor vehicle, the said motor vehicle being considered a dangerous instrumentality. This doctrine was derived from an analogy between the negligent use of a motor vehicle and the negligent handling of a deadly weapon."

■ That the decedent may have been guilty of negligence which contributed to her injury is not a defense to the prosecution of appellants. *State v. Hanahan,* 111 S. C. 58, 96 S. E. 667.

The evidence in the case at bar was more than ample for the jury to find beyond reasonable doubt that the appellants were guilty of negligence, at least, which proximately caused decedent's death. This was more than necessary to require the court to submit to the jury the issue of appellants' guilt. Therefore, it was not error to deny the motion to direct the verdict.

■ The remaining ground of appeal arises from the cross-examination of one of appellants. The questioned portion of it is reproduced from the record, as follows:

"Q. * * * How many times have you been up in Court before?

"Mr. Brown: We object: We have not put the defendant's character in evidence. * * *

"Mr. Watt: After the jury finds a verdict against him. * * *

"The Court: What is the purpose of developing that here? * * *

"By Mr. Watt: Q. Have you ever been convicted of robbery? A. I have not, for I have not robbed anybody; I have not.

"Q. What were you convicted for in the Federal Court? A. Conspiracy.

"Q. Conspiracy for what—was that in connection with stealing an automobile? A. It was not in connection with stealing anything; it was the Mann Act.

"Q. You have been up for larceny? A. I don't know what larceny is; but I have never been convicted of it.

"Q. You don't know what larceny is? A. I could not tell you to save my life.

"Q. You were indicted for larceny—what became of it?

"The Court: I thought it was conspiracy to violate the tax law. * * * Is there anything further? * * *

"Mr. Watt: Nothing further, excepting in reply."

The first question in the foregoing excerpt from the record was not pressed after the objection of defendants' counsel; and there was no objection to the further questions, so we need not decide the competency of them. For the substantive law upon the subject of such cross examination of a defendant who testifies, see *State v. Chasteen,* S. C., 97 S. E. (2d) 517, and the authorities there cited.

Judgment affirmed.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.