21147

The STATE, Respondent, v Wesley NEWTON, Appellant.
(262 S. E. (2d) 906)

288

*Warren & Pitts,* Allendale, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Brian P. Gibbes,* and *Staff Attys. Buford S. Mabry, Jr.,* and *Harold M. Coombs, Jr.,* Columbia, and *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

February 12, 1980.

RHODES, Justice:

This is an appeal from a conviction of driving under the influence of alcohol, second offense. We affirm.

Following his arrest, appellant was taken to the Hampton County Jail, where he consented to the administration of a breathalyzer test. After testing the breathalyzer with a standard simulator ampoule and obtaining a reading equal to the percent of alcohol in the simulator solution (0.10 percent), the test was administered on appellant. The South Carolina

Law Enforcement Division (SLED) certified operator obtained a reading of 0.18 percent. A 0.10 percent reading or greater on the breathalyzer raises a rebuttable presumption that the person tested is under the influence of alcohol. Subsequent to the completion of the breathalyzer test, both the simulator and test ampoules were nonmaliciously destroyed.

Under this court's ruling in *State v. Parker,* 271 S. C. 159, 245 S. E. (2d) 904 (1978), prior to the admission of results of a breathalyzer test into evidence, the State must prove (1) that the machine was in proper working order at the time of the test; (2) that the correct chemicals had been used; (3) that the accused was not allowed to put anything in his mouth for twenty minutes prior to the test; and (4) that the test was administered by a qualified person in a proper manner. The testimony of the breathalyzer operator that he had run a simulator test immediately before the actual test and that the breathalyzer machine gave a reading equal to the percent of alcohol in the simulator solution, is sufficient to establish, *prima facie,* that the machine was working properly and that the correct chemicals had been used. *Id.* If there is evidence challenging the *prima facie* showing made, the judge must rule upon the admissibility in light of the entire evidence. *Id.*

Appellant maintains that the intentional though nonmalicious destruction of the simulator and test ampoules deprived him of the opportunity to examine the evidence against him and amounted to the destruction of material evidence which could have potentially established his guilt or innocence. He contends that by reason of the above circumstances, he had been deprived of his right to due process, thereby rendering the results of the breathalyzer test inadmissible.

The United States Supreme Court in *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963), imposed a duty on the prosecution to disclose material evidence favorable to a defendant. This duty has been extended by cases such as *People v. Hitch,* 12 Cal. 3d 641, 117 Cal.

Rptr. 9, 527 P. (2d) 361 (1974) and *Lauderdale v. State,* 548 P. (2d) 376 (Alaska 1976), both of which are relied upon by appellant, to require the preservation of ampoules used in breathalyzer tests. *See also State v. Michener,* 25 Or. App. 523, 550 P. (2d) 449 (1976). These cases hold that such evidence is material to the issue of guilt or innocence on the charge of driving under the influence and that due process of law would therefore require that the prosecution make available such evidence. Where such evidence cannot be produced, the results of breathalyzer tests have been suppressed.

The majority of courts addressing this issue, however, have reached the opposite result. *See, e. g., State v. Cantu,* 116 Ariz. 356, 569 P. (2d) 298 (1977); *People v. Hedrick,* 557 P. (2d) 378 (Colo. 1976); *People v. Godbout,* 42 Ill. App. 3d 1001, 1 Ill. Dec. 583, 356 N. E. (2d) 865 (1976); *People v. Stark,* 73 Mich. App 332, 251 N. W. (2d) 574 (1976); *Edwards v. State,* 544 P. (2d) 60 (Okla. Cr. App. 1975).

The extension of the *Brady* doctrine by those cases relied upon by appellant to those instances where there is a "reasonable possibility" that the ampoules might constitute favorable evidence, is not constitutionally justified since *Brady* focused upon the harm to a defendant resulting from nondisclosure, while *Hitch* diverted this concern from the reality of prejudice to speculation about the contingent benefits to a defendant. *Edwards v. Oklahoma,* 429 F. Supp. 668 (D. C. 1976). Mere absence of evidence of speculative value to a defendant without deliberate misconduct by the prosecution does not deprive a defendant of a fair trial. *Id.*

In the instant case, appellant has not attempted to show that the ampoules, if available, could be subjected to scientific retesting which would yield reliable results. No expert witnesses were produced to demonstrate what the possible results would be. An examination of the

record reveals only that appellant sought to raise the possibility of there existing a defect in the ampoules used. At best, appellant's contentions constitute mere speculation on his part, with nothing advanced to realistically suggest the probability that information of any definite value would be obtained from any reliable process of re-examination.[1] *See Edwards v. State,* 544 P. (2d) 60 (Okla. Cr. App. 1975).

Aside from the destruction of the ampoules used in the breathalyzer test, appellant contends that the lack of establishment of a chain of custody for the simulator solution and test ampoules, the use of a stale stock solution, and the use of incorrect or unknown chemicals in the ampoules singly and together deprived him of his right to due process. We disagree.

This court held in *Benton v. Pellum,* 232 S. C. 26 at 27, 100 S. E. (2d) 534 at 537 (1957) that

[w]hile proof need not negative all possibility of tampering [citations omitted], it is generally held that the *party offering* such specimen *is required to establish, at least as far as practicable, a complete chain of evidence.* (Emphasis added.)

As the ampoules were never offered into evidence, this rule is inapplicable under the facts presented in the instant case.

Appellant also contends that the use of simulator stock solution beyond the recommended thirty-day period of use denied him due process of law. Testimony elicited at trial indicated that the stock solution was thirty-six days old at the time appellant was tested. Appellant fails,

---

1 Although we make no determination in this opinion on the admissibility of expert testimony attempting to demonstrate that scientific re-testing of used breathalyzer ampoules will yield reliable results, other cases in other jurisdictions have determined such expert testimony to be inadmissible since it did not meet the standard set forth in *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (1923). *See State v. Canaday,* 90 Wash. (2d) 808, 585, P. (2d) 1185 (Wash. 1978). The *Frye* decision holds that expert testimony may be permitted to reach a trier of fact only when the realibility of the underlying scientific principles has been accepted by the scientific community.

however, to show what effect, if any, the use of such stale stock solution would have on the results of a breathalyzer test. Furthermore, testimony elicited from the test operator indicated that the solution remained effective for a sixty-day period.

Appellant contends that the use of vodka instead of absolute alcohol, contrary to the breathalyzer instructional manual, and of chemicals other than those required by the breathalyzer instructional manual violated the requirements of *State v. Parker, supra.* Although the test operator testified that the chemical contents of the ampoules consisted of sulfuric acid, potassium dichromate, and silver nitrate, no evidence was presented to show that the instructional manual required only two chemicals, potassium dichromate and sulfuric acid, as contended by appellant in his brief. Questions which are not presented to or passed upon by the trial judge cannot be raised for the first time on appeal and are consequently waived. *Smart v. Charleston Mobile Homes, Inc.,* 269 S. C. 588, 239 S. E. (2d) 78 (1977).

Testimony was also elicited from the test operator concerning the use of vodka in the simulator stock solution, as opposed to absolute alcohol, as required by the instructional manual. The test operator went on to testify, however, that he was instructed by SLED pursuant to its training manual to use vodka in creating the simulator stock solution. SLED regulation 73-2, as set forth in the South Carolina Code (1976), provides that the approved method of operating a breathalyzer shall be "as set forth in the manufacturer's instructional manual *and in accordance with any supplementary written instructions governing operation or maintenance issued by the South Carolina Law Enforcement Division."* (Emphasis added.)

Appellant's assertion that the lower court erred in admitting the breathalyzer test results despite the lack of evidence on the part of the State that the chemicals used in

either the simulator or test ampoules were the correct chemicals, disregards this court's holding in *State v. Parker, supra.* As noted previously, a *prima facie* showing that the machine is operating properly and that the correct chemicals were used is made upon the testimony of the test operator that he had run a simulator test immediately before the actual test and that the breathalyzer machine gave a reading equal to the percent of alcohol in the simulator solution. *State v. Parker, supra.* In order to overcome this *prima facie* showing, it is necessary that appellant demonstrate that a 0.10 percent standard test reading is reasonably possible even though the ampoule chemical composition is in error or that the machine can malfunction without such being detected through the simulator test. Appellant has failed to present any scientific expert testimony to make such a demonstration.

Appellant next takes exception to the failure of the lower court to direct a verdict in his favor on the basis of a denial of equal protection of the law through the State Highway Department's endorsement upon his driver's license of the record of his previous license suspension for driving under the influence. This is without merit. The license to drive an automobile is not a property right, but a privilege which may be extended to individuals under various circumstances. *State v. Collins,* 253 S. C. 358, 170 S. E. (2d) 667 (1969). Such a privilege is always subject to such reasonable regulation and control as the proper authorities see fit to impose under the police power in the interest of public safety and welfare. *See 7* Am. Jur. 2d, *Automobiles and Highway Traffic* § 97 (1963). Equal protection safeguards are offended only when a classification rests on grounds wholly irrelevant to the achievement of the State's goals. *State v. Smith,* 271 S. C. 317, 247 S. E. (2d) 331 (1978). The Highway Department, pursuant to Section 56-1-400, South Carolina Code (1976), is required to endorse on the license of one who has had his license suspended a record of the suspension and the grounds therefor. Since

the endorsement enables police officers to note immediately upon looking at a driver's license whether or not the driver is required to maintain proof of financial responsibility with the State Highway Department pursuant to Section 56-9-500, South Carolina Code (1976), as a result of a driver's previous license suspension or revocation, such a notation on the driver's license of those convicted of driving under the influence does not offend the requirement of equal protection of the law.

Appellant's final contention is that the lower court erred in failing to charge the jury with the four requirements set forth in *State v. Parker, supra,* for the admission of breathalyzer test results into evidence. Appellant analogizes the instant case to that of a case in which the admission of a confession is sought. In the latter situation, the trial judge is required to make an initial determination on the admissibility of a confession, with a final determination being made by the jury. *State v. Lee,* 255 S. C. 309, 178 S. E. (2d) 652 (1971). However, the constitutionally protected right against self-incrimination as to testimonial evidence cannot be equated with nontestimonial evidence resulting from a scientific test. *Schmerber v. California,* 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. (2d) 908 (1966). As the four requirements set forth in *State v. Parker, supra,* concern the admissibility of the evidence only, and since the admission or exclusion of evidence is normally addressed to the discretion of the trial judge, *Wright v. Public Savings Life Ins. Co.,* 262 S. C. 285, 204 S. E. (2d) 57 (1974), there was no error on the part of the lower court in failing to instruct the jury on the requirements for the admissibility of breathalyzer test results as set forth in *Parker.*

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.