498 S.E.2d 212

**The STATE, Respondent,**

v.

**John KERR, Appellant.**

**No. 2799.**

Court of Appeals of South Carolina.

Submitted Dec. 2, 1997.

Decided Feb. 23, 1998.

Reese I. Joye, Jr., and John L. Drennan, both of the Joye Law Firm, North Charleston; and Stephen P. Groves, and Stephen L. Brown, both of Young, Clement, Rivers & Tisdale, Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Columbia; and Solicitor David P. Schwacke, Charleston, for respondent.

Associate General Counsel W. Baxter Harwell and General Counsel Frank L. Valenta, S.C. Dept. of Public Safety, Columbia, Amicus Curiae.

HUFF, Judge:

Appellant, John Kerr, was charged with and convicted of driving under the influence, second offense. The trial judge sentenced him to one year imprisonment and a $5,000 fine, suspended upon service of six months and payment of a $2,000 fine and one year of probation. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of February 4, 1994, appellant was involved in an automobile accident with Mr. Douglas Sperry on I–26 in Charleston county. Sperry testified he was traveling on I–26 with no one beside him or in front of him. He observed the lights of other cars about a half mile behind him. He then noticed a set of headlights quickly coming up on him. This car then pulled to the left of Sperry, came up about half the length of Sperry's truck, and then veered to the right into the side of Sperry's vehicle. The car's front passenger side hit Sperry's left rear tire on the driver's side. Sperry's truck flipped over several times and landed in the median, facing the opposite direction. Sperry estimated the car that hit him had been traveling at a speed of around 70 or 75 miles per hour.

Three witnesses came forward who observed the accident. James Colburn testified he observed appellant's vehicle pass a tractor trailer, then cut over in front of that tractor trailer, causing the driver to hit his brakes. Appellant then cut in front of Colburn and entered the far left lane, traveling at a high rate of speed. Appellant then moved to the right and hit Sperry's truck. Colburn described appellant's driving as "out of control" and estimated appellant's speed at 70 miles per hour or better. After the accident, he noticed the appellant was staggering around.

Ginger Morrison was traveling on I–26 with her stepmother, Darlene Wooten, when she observed appellant weaving in and out of traffic, passing other vehicles. She, like Colburn, observed a semi-truck that had to maneuver to avoid a collision with appellant. She then observed appellant's car catch the back area of Sperry's truck, causing the truck to flip over at least twice. After the accident, she observed appellant from a distance. She stated he appeared unsteady on his feet. She described appellant's driving as reckless and erratic.

Wooten testified she also observed appellant almost hit the tractor trailer. She stated he was "all over the road." She also noticed, after the accident, appellant was "wobbling back and forth."

A local police officer came on the scene first and had appellant sit in the police vehicle. State Trooper Jonathan Hyman responded to a call for the accident and, after making sure the roadway was clear, requested the officer bring appellant over to him. Hyman questioned appellant as to whether he was injured and, at that time, noticed appellant had a strong odor of alcohol about him. Hyman asked appellant if he had been drinking, and appellant responded that he'd had several drinks. Hyman then offered appellant field sobriety tests, which appellant was unable to successfully complete. According to Hyman, appellant was uncooperative and he acted as if everything were a joke. When Hyman asked appellant to state his ABC's, appellant began singing them instead, and he was unable to recite all the letters. Hyman further requested appellant perform a one-legged stand test, but appellant did not do it. Hyman determined that appellant was driving under the influence and placed him under arrest. Hyman then read appellant his *Miranda* rights and transported him to the county jail. Appellant offered no other statements.

Trooper Michael Barnhill was called to the station to administer a data master test. He offered appellant the test and read appellant his rights pursuant to the implied consent warning. He told appellant he had the right to refuse the test, but if he refused, his privilege to drive in the state would be suspended for ninety days. Appellant told Barnhill he understood his rights. During an observation period, Barnhill noticed that appellant smelled of alcohol and his speech was slurred at times. When it was time for appellant to take the test, he refused to blow into the instrument without a public defender present. Barnhill responded that he did not know how to contact a public defender at that time of night, and asked appellant if he had a private attorney, to which appellant responded in the negative. Appellant's test recorded as a refusal.

At trial, appellant testified in his own defense. He stated that he left his place of employment sometime after 10:00 p.m. that evening and stopped at a fast food restaurant for dinner. From there, he went to a bar where he saw a coworker. He stated he only had two beers that night, leaving the bar around 11:30 p.m. On his way home, he pulled onto the interstate behind a tractor trailer. He moved directly from the entrance ramp over to the left lane and remained there. He stated his speed was only 60 miles per hour. According to appellant, Sperry merged his truck onto the interstate across the lanes. Appellant then touched his brakes a couple of times, but Sperry continued to move over and Sperry's wheel then hit the side of his car and flipped over him.

After appellant stopped his car, he remained in the vehicle until an officer directed him to sit in his cruiser. When the officer asked him whether he had been drinking, he told him he had a couple of drinks. At the officer's request, appellant recited his ABC's. The officer then asked appellant to say them again. The officer also requested appellant perform a one-legged stand. Appellant realized the officer thought he was intoxicated, and then asked for a lawyer. When Officer Barnhill spoke to him about the data master test, appellant stated he wanted a lawyer and refused to do anything until one was present. On cross-examination, appellant denied driving at 70 miles per hour, denied almost colliding with the tractor-trailer, denied weaving in and out of traffic, denied turning into Sperry's truck, and denied telling Officer Hyman that he had several drinks. Appellant admitted that he also told Hyman he had not had anything to drink because he was afraid the officer was trying to arrest him.

Following closing arguments, the judge charged the jury on the law. He refused to charge the jury a requested instruction by the defense that the fact that appellant refused the breathalyzer test could not be held against him. His charge on driving under the influence included the following:

Now ladies and gentlemen, in order to determine whether the defendant was driving under the influence I would charge you that, to constitute a violation of this statute, it is not necessary to show that the defendant was in a helpless condition or that he was dead drunk or even so drunk that he could not walk without staggering.

On the other hand, proof that the defendant had at some time, previous to this incident, had partaken of an intoxicating beverage is not sufficient in itself to establish a violation. It must be shown that he was sufficiently under the influence to impair his ability to operate the vehicle in the same manner that a person of his ability as a driver, who had not drunk any intoxicating beverage, could have operated it under the same circumstances.

One is under the influence within the meaning of the statute only when he has drunk a sufficient quantity of an intoxicating beverage to appreciably impair the normal control of his bodily or mental faculties or both of them.

One may be under the influence, as contemplated by the statute, without being drunk, passed out or even intoxicated. One violates the statute if he partakes of alcohol to the extent that he cannot drive a motor vehicle with reasonable care. Or if he partakes of alcohol to the extent he cannot drive as a prudent driver would operate a vehicle.

So the question is not, was the defendant drunk or intoxicated. The question is, was his condition such that he could drive with due regard for others, including himself? If not, then he has violated the statute.

Appellant objected to the driving under the influence charge. He also objected to the judge's refusal to charge that appellant had a right to refuse to take the breathalyzer which could not be held against him. The judge noted his exceptions but did not recharge the jury. The jury subsequently found appellant guilty.

## ISSUES

1. Did the trial judge err in refusing to accept an alleged plea agreement between the State and appellant?
2. Did the trial judge err in charging the jury as he did on the standard of proof for driving under the influence?
3. Did the trial judge err in admitting incriminating statements into evidence where appellant was in custody and had not received *Miranda* [1] warnings?

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Did the trial judge err in failing to address whether appellant's statements were involuntary and therefore should be suppressed?

5. Did appellant's criminal prosecution after suspension of his driver's license constitute a violation of the Double Jeopardy Clause?

6. Did the trial judge err in admitting photographs not produced prior to trial pursuant to a Rule 5, SCRCrimP motion?

7. Did the trial judge err in refusing to instruct the jury that appellant had a legal right to refuse to take the breathalyzer?

## LAW/ANALYSIS

### 1. Guilty Plea

■ Appellant first contends the trial judge erred in refusing to accept a negotiated guilty plea between appellant and the State. He argues that under South Carolina law, the solicitor possesses unfettered discretion to control the pending docket by determining which cases are tried and which are plea-bargained. Appellant maintains that this refusal denied him the opportunity to "plea out" to a lesser offense with a substantially reduced penalty. He asserts he is therefore entitled to reversal of his conviction. We disagree.

During the proceedings, appellant attempted to enter on the record a plea agreement that he and the solicitor had allegedly reached prior to trial, and brought up in the judge's chambers. The judge refused to take up the matter during trial and stated that the parties did not offer to make a plea in front of him in his chambers. Later during the trial when the subject was again brought up, the judge stated appellant had attempted to involve him in the plea negotiations, which was improper. He emphasized he would accept a "straight up" plea but would not accept a plea from a second offense down to a first.

■ It is the prerogative of any person to waive his rights, confess, and plead guilty, under judicially defined safeguards, which are adequately enforced. *State v. Easler*, 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996) ("*Easler I*"), aff'd as modified, *State v. Easler*, 327 S.C. 121, 489 S.E.2d 617

(1997) *("Easler II")*. However, *an appellant has no constitu-tional right to plea*. *Id*. An accused has the right to trial by an impartial jury. Conditioning a waiver of this right on the consent of the prosecutor and the trial judge would create no constitutional impediment since the result of their refusal to consent is that the accused is subject to trial by an impartial jury, that to which he is constitutionally guaranteed. *State v. Whitted*, 279 S.C. 260, 305 S.E.2d 245 (1983). See also *Easler I*, supra (no constitutional impediment exists in a trial judge's refusal to accept a defendant's guilty plea since the result of his refusal is that the accused is subject to a trial by an impartial jury, which is a constitutional guarantee). We find no error.

## 2. DUI Charge

▇ Appellant next asserts the trial judge erred in .charg-ing the jury on the standard of proof for driving under the influence. He contends the judge charged an improper stan-dard by instructing the jury that appellant would be under the influence if he was unable to operate the vehicle in the .same manner that a person who had not consumed any intoxicating beverage could.

▇ S.C.Code Ann. § 56–5–2930 (1991) provides in per-tinent part:

It is unlawful for any person who is a habitual user of narcotic drugs or any person who is under the influence of intoxicating liquors, narcotic drugs, barbiturates, paraldeh-ydes or drugs, herbs or any other substance of like charac-ter, whether synthetic or natural, to drive any vehicle within this State.

The proscribed conduct is the operation of a motor vehicle by one who is under the influence of intoxicating liquor or drugs. One is under the influence, within the meaning of the statute, when the ingestion of one or more of the substances listed therein has resulted in the impairment of his faculties. *State v. Sheppard*, 248 S.C. 464, 150 S.E.2d 916 (1966). "Under the influence" means sufficiently under the influence as to impair the ability of such driver to operate the vehicle with reason-able care. *State v. Caldwell*, 231 S.C. 184, 98 S.E.2d 259 (1957). One may be under the influence as contemplated by

the traffic laws without being drunk or passed out, or even intoxicated. One violates the traffic statute if he partakes of alcohol to the extent that he cannot drive a motor vehicle with reasonable care, or if he cannot drive as a prudent driver would operate a vehicle. *Dixon v. Weir Fuel Co.*, 251 S.C. 74, 160 S.E.2d 194 (1968). The question is not whether the defendant is drunk or intoxicated, but whether his condition is such that he could drive with due regard for others and himself. *Id.* Driving under the influence is therefore established by proof that defendant's ability to drive was materially and appreciably impaired. *City of Orangeburg v. Carter*, 303 S.C. 290, 400 S.E.2d 140 (1991) (citing *Dixon v. Weir Fuel Co., supra* ).

The trial judge properly charged the jury in part on the standard of proof necessary to establish driving under the influence. However, he improperly instructed the jury to use the standard of one's driving "who had not drunk any intoxicating beverage." Prior case law speaks in terms of the ability to operate a vehicle with reasonable care and as a prudent driver with due regard for himself and others. These are proper standards with which to compare the defendant when determining whether defendant's driving abilities were materially and appreciably impaired. The trial judge also instructed the jury to consider the standard of a driver who had not partaken of any intoxicating beverage. One violates the statute by operating a motor vehicle where he has partaken an intoxicating beverage to the extent that he cannot drive a motor vehicle with reasonable care, or cannot drive as a prudent driver would operate a vehicle.

 The charge, as given by the trial judge, may possibly have confused the jury. However, a confusing charge alone is insufficient to warrant reversal. *State v. Jefferies*, 316 S.C. 13, 446 S.E.2d 427 (1994). Jury instructions must be considered as a whole, and if, as a whole, they are reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *State v. Barksdale*, 311 S.C. 210, 428 S.E.2d 498 (Ct.App.1993). When reviewing a trial judge's instruction for error, this court must consider the instructions in their entirety. *State v. Andrews*, 324 S.C. 516, 479 S.E.2d 808 (Ct.App.1996). In order to find the error harmless, we must determine beyond a reasonable doubt that

the error complained of did not contribute to the verdict. *Id.* We must review the facts the jury heard and weigh those facts against the erroneous jury charge to determine what effect, if any, it had on the verdict. *State v. Jefferies, supra.* In making a harmless error analysis, our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered. *Id.*

Considering the charge as a whole, we find no error. The trial judge properly charged the jury on various standards to be used in determining whether a defendant was under the influence. Further, even if the charge may have confused the jury by using a comparison to a driver who had partaken of no alcohol, in considering the charge in its entirety and the overwhelming evidence of appellant's impairment, we find it could not have contributed to the jury's verdict. *See State v. Strange,* 308 S.C. 256, 417 S.E.2d 609 (Ct.App.1992) (any error in jury charge harmless beyond a reasonable doubt where there was overwhelming evidence of defendant's impairment). Accordingly, we affirm this issue.

### 3. Suppression of Statements under *Miranda*

Appellant next contends he is entitled to a new trial based on the trial judge's improper admission of certain statements made by him. He asserts, because he was in custody when he admitted he had been drinking and when he gave an "allegedly less than perfect rendition of the ABC's" to Trooper Hyman, and because he had not been given his *Miranda* warnings, the statements should have been suppressed. We disagree.

Our Supreme Court has previously held that *Miranda* warnings are not required for statements made at the scene of a traffic accident if the defendant is not in custody or significantly deprived of his freedom. *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). In *Morgan,* the court found the defendant's view that he was deprived of his freedom was not sustained by the record, noting that a traffic accident had just occurred and the statements made by the defendant were made during the course of a routine investigation into the cause.

 More recently, in *State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997) (*"Easler II"*), the Supreme Court held as follows:

> *Miranda* warnings are required for official interrogations only when a suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." This language has been interpreted as meaning formal arrest or detention associated with a formal arrest. In determining whether a suspect is "in custody," the totality of the circumstances, including the individual's freedom to leave the scene and the purpose, place and length of the questioning must be considered. The fact the investigation has focused on the suspect does not trigger the need for *Miranda* warnings unless he is in custody. *Miranda* warnings were "not intended to hamper the traditional function of police officers investigating a crime." The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody. The initial determination of whether an individual was in custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned.

(citations omitted).

Viewing the totality of the circumstances in this case, we find appellant was not in custody at the time he made the statements to Trooper Hyman. The subjective views harbored by either Hyman or the appellant are irrelevant. Rather, it is the objective circumstances of the interrogation that are to be considered in determining whether appellant was in custody at the time. The facts of this case are similar to those of *Morgan*. Hyman was performing a routine investigation into the cause of a traffic accident when appellant stated to the officer that he had been drinking.[2] Accordingly, we find *Miranda* warnings were not required and the statements were properly admitted.

---

**2.** We further find no error in the admission of testimony regarding the field sobriety tests pursuant to *State v. Peele*, 298 S.C. 63, 378 S.E.2d 254 (1989).

#### 4. Suppression of Statements as Involuntary

■ Appellant next contends that the trial judge erred in failing to specifically determine or address the voluntariness of appellant's statements to the trooper. He argues the statements were not voluntarily made and, therefore, should have been suppressed. He asserts he is entitled to a reversal of his conviction on this basis. We disagree.

The record reveals that counsel objected to testimony from Hyman regarding appellant's statement as to whether he had been drinking. The court then held a *Jackson v. Denno*[3] hearing outside the jury's presence on the admissibility of appellant's statements. During this hearing, the trooper was questioned regarding what occurred prior to him arresting appellant and reading him his *Miranda* rights. The trooper was also asked about the voluntariness of the statements made by appellant. Hyman stated that he had not taken appellant into custody, he did not force or coerce the statements from appellant, and that the statements were voluntarily made. Appellant also took the stand during this hearing. He stated he felt he was under the trooper's authority as soon as he came in contact with him, and that he was not free to leave. He stated that, after he recited the ABC's, he told Hyman he wanted an attorney. Appellant did not state that he was forced or coerced in any way. The trial judge ruled there was "nothing wrong with this investigation" and found the statements admissible. Appellant never requested a specific ruling on the voluntariness of the statements. Accordingly, this issue is not preserved for appeal. *See State v. Clute*, 324 S.C. 584, 480 S.E.2d 85 (Ct.App.1996) (after trial court ruled defendant was not in custody for purposes of *Miranda*, defendant failed to request specific ruling as to voluntariness issue and issue therefore was not preserved for appeal). Further, we find an implicit ruling by the trial judge that the statements were voluntarily made. This ruling is supported by the evidence.

#### 5. Double Jeopardy

■ Appellant next argues that the trial judge erred in denying his motion to dismiss on the grounds that this criminal prosecution violated the Double Jeopardy Clause, as he

---

**3.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

had already been punished by the suspension of his driving privileges. We disagree.[4]

The Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This double jeopardy clause protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *McMullin v. South Carolina Dept. of Rev. and Tax.*, 321 S.C. 475, 469 S.E.2d 600 (1996). Appellant asserts at issue here is whether he is facing multiple punishments for the same offense under the third prong.

While appellant characterizes this as multiple punishment for the same offense, there are two separate and distinct offenses involved here. Appellant's driver's license was suspended pursuant to S.C.Code Ann. § 56-5-2950 (Supp.1996), the implied consent statute.[5] This section provides in pertinent part:

(a) A person who operates a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs if arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle while under the influence of alcohol, drugs, or a combination of them. A test must be administered at the direction of a law enforcement officer who has apprehended a person for operating a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of them ...

(d) If a person under arrest refuses, upon the request of a law enforcement officer, to submit to chemical tests as provided in subsection (a) of this section, none may be given, but the department, on the basis of a report of the law enforcement officer that the arrested person was operating

---

4. The South Carolina Department of Public Safety filed an amicus curiae brief addressing this issue which generally reiterates the State's position.

5. By consent order, this suspension was stayed pending final determination of a petition for judicial review. The record is silent as to the outcome of that judicial review.

a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of them and that the person had refused to submit to the tests shall suspend his license or permit to drive, or any nonresident operating privilege for a period of ninety days....

(e) Upon suspending the license or permit to drive or nonresident operating privilege of any person, or upon determining that the issuance of a license or permit must be denied to the person, as hereinbefore in this section directed, the department shall notify immediately the person in writing and, upon his request, shall afford him an opportunity for a hearing in accordance with the State Administrative Procedures Act, except that the scope of the hearing for the purposes of this section must be limited to the issues of whether the person was placed under arrest, whether the person had been informed that he did not have to take the test but that his privilege to drive would be suspended or denied if he refused to submit to the test, and whether he refused to submit to the test upon request of the officer. The department shall order that the suspension or determination that there should be a denial of issuance either be rescinded or sustained.

The criminal prosecution of appellant is pursued based on the act of driving under the influence in violation of S.C.Code Ann. § 56–5–2930 (1991). Appellant's suspension of his driver's license, however, resulted solely from his failure to submit to a breathalyzer test pursuant to S.C.Code Ann. § 56–5–2950 (Supp.1996). *South Carolina Dep't of Highways and Pub. Transp. v. Sanford,* 318 S.C. 44, 455 S.E.2d 710 (Ct.App.1995). Further, such a suspension is mandatory and is not dependent on the outcome of the criminal prosecution. *Id.* Accordingly, these are two separate and distinct offenses based on different acts of the appellant.

The license to drive an automobile is not a property right, but a privilege which may be extended to individuals under various circumstances. *State v. Newton,* 274 S.C. 287, 262 S.E.2d 906 (1980). Such a privilege is always subject to such reasonable regulation and control as the proper authorities see fit to impose under the police power in the interest of public safety and welfare. *Id.* The legislature has declared that those who choose to drive in this state impliedly consent

to the tests authorized by § 56–5–2950 and that a person's refusal to take a test shall result in a suspension of the person's driving privilege for ninety days. *Sanford, supra.* A suspension follows as a consequence and effect of refusing to take the tests as authorized by the statute. It is a forfeiture of the privilege to drive due to the failure of the licensee to observe certain conditions under which the license was issued. *Parker v. State Highway Dep't,* 224 S.C. 263, 78 S.E.2d 382 (1953). The suspension constitutes no part of the punishment fixed by the court, nor is it added punishment for the offense of driving under the influence. *Id.* The purpose of the suspension is to protect the public, not to punish the licensee. *Id.* Accordingly, we find no double jeopardy violation.

### 6. Suppression of Evidence for Violation of Rule 5, SCRCrimP

■ Appellant also asserts error in the admission of certain photographs into evidence. He contends the trial judge committed reversible error by admitting this evidence, where the State failed to produce the photos pursuant to his Rule 5, SCRCrimP motion. We disagree.

■ Under Rule 5(d)(2), SCRCrimP, where a party fails to comply with Rule 5, the court may order the noncomplying party to permit inspection, grant a continuance, prohibit introduction of the nondisclosed evidence, or enter such order as it deems just under the circumstances. *State v. Trotter,* 322 S.C. 537, 473 S.E.2d 452 (1996). Sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion. *State v. Davis,* 309 S.C. 56, 419 S.E.2d 820 (Ct.App.1992).

Assuming for the moment that the State did, in fact, fail to properly produce the pictures pursuant to the rule, we discern no prejudice to the appellant. The pictures in question are merely depictions of the damage to Sperry's truck after the accident. The collision between appellant and Sperry was admitted by appellant. Accordingly, we find no abuse of discretion.

### 7. Failure to Submit to Breathalyzer Charge

■ Appellant lastly argues that the trial judge erred in failing to charge the jury that appellant had a statutory right to refuse to take the breathalyzer test. We disagree.

The record reveals appellant requested the following charge be given to the jury:

I instruct you now and emphasize to you that the failure of a defendant to take a breathalyzer test is not a factor to be considered by you in any way in your deliberation and in your consideration on the question of the guilt or the innocence of the accused. It must not be considered by you in any manner whatsoever against the defendant or mitigate against him in any respect whatsoever.

A defendant has a statutory right to not take a breathalyzer test and the assertion of such statutory right cannot and must not be considered by you in your deliberations.

Under your oath then you are to reach no inference or draw no conclusion whatsoever from the fact that a defendant in this case did not take a breathalyzer test. The failure of this defendant to take a breathalyzer test should not even be discussed in the jury room. The burden of proof as I have stated to you, is upon the State. The burden of proof is upon the State to prove guilt beyond a reasonable doubt and the failure of a defendant to take a breathalyzer test is not a factor to be considered by you in determining the guilt or the innocence of a defendant.

The trial judge agreed to charge the jury that appellant had a statutory right to not take the breathalyzer test, but refused to include in the charge that the jury could not hold that refusal against him. Following the jury charge, appellant objected to the judge's failure to instruct the jury as requested on appellant's right to refuse the test. The trial judge stated he would instruct the jury on appellant's right to not take the test, but refused to charge that the jury could not consider his refusal.

A defendant's constitutional rights are not violated by the admission of testimony of the defendant's failure to submit to a chemical test designed to measure the alcoholic content of his blood. *State v. Jansen,* 305 S.C. 320, 408 S.E.2d 235 (1991). It is well established in this State that one who is arrested for DUI impliedly consents to a breathalyzer test, and that the revocation of that consent is constitutionally

admissible as prosecutorial evidence at the trial pursuant to that arrest. *Id.*

Here, appellant sought a charge that the jury could not consider the fact that appellant refused the breathalyzer test as prosecutorial evidence against him. As that is not the law of this State, the charge was properly refused. *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996). We find no error.

For the foregoing reasons, the appellant's conviction is **AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.