**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Earnest Maurice Allen, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2019-002056

―――――――――

Appeal From Kershaw County
Kristi F. Curtis, Circuit Court Judge

―――――――――

Unpublished Opinion No. 2024-UP-124
Heard December 5, 2023 – Filed December 5, 2023

―――――――――

**AFFIRMED**

―――――――――

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Petitioner.

Assistant Attorney General Andrew Douglas Powell, of
Columbia, for Respondent.

―――――――――

**PER CURIAM:** In this appeal from the denial of an application for post-conviction relief (PCR), this court granted certiorari to review the PCR court's finding that Petitioner failed to prove (1) his appellate counsel was ineffective for failing to raise the issue of whether the trial court erred in instructing the jury that attempted murder did not require specific intent to kill and (2) his trial counsel was

ineffective for failing to object to the trial court's jury instruction for attempted murder that stated malice could be inferred from the use of a deadly weapon.  We affirm.

In 2013, a Kershaw County grand jury indicted Petitioner for four counts of attempted murder, possession of a weapon during the commission of a violent crime, and resisting arrest with a deadly weapon.  Petitioner proceeded to a jury trial in January 2014.

Sergeant Michael Sellers of the Kershaw County Sheriff's Department testified that in December 2012, the Sheriff's Department was looking for Petitioner because he had nine outstanding bench warrants for failure to appear in court.  Sergeant Sellers explained he pursued a van in which Petitioner was traveling before activating his blue lights to conduct a felony traffic stop.  Because Petitioner "was wanted on nine serious charges" and had a gun, Sergeant Sellers stated this was a felony traffic stop.  Accordingly, the officers "called him out of the [van]" instead of approaching the vehicle themselves.  Sergeant Sellers recalled that after the van stopped, the passenger side door opened, and Petitioner "bailed" and started running.  Sergeant Sellers testified he began chasing Petitioner when he "saw something silver go around towards [him] and saw a flash."  He explained that Petitioner pointed a gun in his direction, but he did not know if the bullet ricocheted or passed by him.  Sergeant Sellers indicated that while he ran for cover, he yelled to Deputy Justin Scott, who was also pursuing Petitioner, that Petitioner had a gun.  He observed Deputy Scott continue to gain on Petitioner, and when Petitioner reached the edge of the woods, they "both faced each other" and "numerous shots" were fired.  Sergeant Sellers specifically recalled he could tell Petitioner had stopped running "because the muzzle flash was not moving" and "the muzzle flash was out in front of [Petitioner]."  On cross-examination, Sergeant Sellers clarified Petitioner fired at him over his shoulder backwards while still running.  Regarding the altercation with Deputy Scott, Sergeant Sellers admitted that it was dark and he could not see which direction Petitioner was facing; however, he stated he could identify the direction Petitioner shot the gun because "[w]hen you see the muzzle flash, the end of the muzzle flash, the gun is pointed in that direction."  Sergeant Sellers reiterated he could not tell which direction Petitioner was facing when he shot towards Deputy Scott.

Investigator Richard Bailey testified he was on call on the night of the shooting.  He indicated he pulled up, saw Petitioner jump out of the van, and watched Deputy Scott run after him.  Investigator Bailey stated he followed Deputy Scott and heard multiple shots, recalling "it sounded like the bullets [were] hitting things within close proximity to us."  He indicated he was right behind Deputy Scott when the

shooting started, so he could not see whether Petitioner "squared off." On cross-examination, Investigator Bailey admitted that in his initial statement, he did not report hearing bullets whizzing by him.

Captain Edward Corey testified that when he initiated the traffic stop, he saw someone "dart out of the right side of the van," but he could not identify the person in the dark. He stated he moved towards a ditch when he saw "a body up under the yard light come around and square off and actually fire four rounds." He indicated he was twenty or thirty yards from the person when this occurred and he did not know who Petitioner fired the rounds towards. Captain Corey testified he "could see clearly a shadow turning around and facing me" and that he "actually squared off and fired [the gun]." He stated Petitioner did not fire over his shoulder. He did not recall seeing bullets or a muzzle flash, but he remembered hearing four rounds fired. On cross-examination, Captain Corey acknowledged he never crossed the ditch and it was dark, but he stated he "saw a shadow turn and fire."

Deputy Scott testified he pursued Petitioner when the van stopped. He explained he heard but did not see the first few shots. Deputy Scott indicated he continued to pursue Petitioner, who shot again, and he fired back at him. He recalled that when he began firing, he was twenty-five to thirty yards from Petitioner. Deputy Scott stated that when Petitioner arrived at the edge of the woods, "[Petitioner] turned around [and] pointed the gun at [him] because [he] was the closest one at the time." He indicated Petitioner fired another shot, so he fired several more back at Petitioner. Deputy Scott testified Petitioner appeared to be fifteen yards from him at that time. On cross-examination, Deputy Scott stated he did not know the distance between Investigator Bailey and the shooting. However, he recalled seeing Petitioner "pointing [the gun] backwards to exactly where [Sergeant] Sellers was at the time." He stated Petitioner turned around and fired one shot from the edge of the woods.

The trial court charged the jury on attempted murder and assault and battery of a high and aggravated nature (ABHAN). The trial court instructed the jury, "Malice aforethought may be expressed or inferred . . . . Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon." The trial court additionally instructed, "A specific intent to kill is not an element . . . of attempted murder, but there must be a general intent to commit serious bodily injury." At the conclusion of the trial court's instructions, trial counsel objected to the charge of attempted murder with regard to specific intent, arguing specific intent was an element of attempted murder. The trial court overruled his objection.

The jury found Petitioner guilty of attempted murder against Sergeant Sellers, attempted murder against Deputy Scott, ABHAN against Investigator Bailey, possession of a weapon during the commission of a violent crime, and resisting arrest with a deadly weapon. The trial court sentenced him to concurrent terms of twenty years' imprisonment for the two attempted murder convictions and the ABHAN conviction. In addition, the trial court sentenced him to four years' imprisonment for possession of a weapon during the commission of a violent crime, to run consecutively with his attempted murder sentence, and two years' imprisonment for resisting arrest, to run concurrently.

Following Petitioner's convictions, appellate counsel filed a direct appeal on his behalf with this court, arguing the trial court erred by failing to grant Petitioner's motion for a directed verdict and by admitting evidence that Petitioner was facing substantial jail time. Appellate counsel filed his initial brief in January 2015, and this court published the opinion in *State v. King*[1] on April 22, 2015. On February 24, 2016, appellate counsel filed a motion to supplement his final brief due to recently decided case law. He cited *King* and sought to add the argument that the trial court erred by instructing the jury that specific intent to kill was not an element of attempted murder. The State filed a return, arguing appellate counsel could not amend his final brief to raise a new issue. This court denied appellate counsel's motion to supplement and affirmed Petitioner's convictions. Thereafter, Petitioner filed an application for PCR.

In his application for PCR, Petitioner asserted appellate counsel was ineffective for failing to raise the issue of trial counsel's jury instruction that specific intent was not an element of attempted murder. Petitioner also contended trial counsel was ineffective for failing to object to the trial court's jury instruction that malice could be inferred by the use of a deadly weapon. After conducting an evidentiary hearing, the PCR court found appellate counsel was not ineffective for failing to raise the issue of specific intent on appeal. The PCR court stated that in 2010, the General Assembly replaced the offense of assault and battery with intent to kill (ABWIK) with the offense of attempted murder and codified ABHAN; in 2015, our supreme court held in *King* that the legislature intended to require specific intent as an element of attempted murder. The PCR court found that *King* was

---

[1] 412 S.C. 403, 772 S.E.2d 189 (Ct. App. 2015) (holding specific intent to kill is an element of attempted murder), *aff'd as modified*, 422 S.C. 47, 810 S.E.2d 18 (2017), and *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 832 S.E.2d 575 (2019).

decided after appellate counsel's briefs had been filed with this court, and at the time of Petitioner's trial, the existing legal authority supported the attempted murder instruction given. Thus, the PCR court determined appellate counsel's decision was made based on his professional judgment of the case law as it existed at the time, and therefore he was not deficient. Finally, the PCR court found Petitioner was not prejudiced because the State presented significant evidence of specific intent regarding his attempted murder convictions.

The PCR court additionally found Petitioner failed to prove trial counsel was ineffective for failing to object to the jury charge that malice could be inferred from the use of a deadly weapon. The PCR court determined trial counsel reasonably believed the implied malice jury instruction was proper, based on the law in effect at the time of trial in 2014. The PCR court further agreed with trial counsel's conclusion that *State v. Belcher*[2] did not apply to Petitioner's two convictions for attempted murder because there was no evidence of self-defense or other mitigating factors.

## ISSUES ON APPEAL

1. Did the PCR court err in finding appellate counsel was not ineffective for failing to raise the issue of whether the trial court erred in instructing the jury that the offense of attempted murder does not require specific intent to kill?

2. Did the PCR court err in finding trial counsel was not ineffective for failing to object the trial court's jury instruction that malice could be inferred from the use of a deadly weapon when evidence was presented that would reduce the charge of attempted murder and the judge charged the jury with the lesser-included offense of ABHAN?

## STANDARD OF REVIEW

"In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). An appellate court will "defer to a PCR court's findings of fact

---

[2] 385 S.C. 597, 612, 685 S.E.2d 802, 810 (2009) (stating a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina when evidence is presented that would reduce, mitigate, excuse or justify the homicide or ABWIK caused by the use of a deadly weapon) *overruled by Burdette*, 427 S.C. at 503, 832 S.E.2d at 582.

and will uphold them if there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). However, an appellate court "review[s] questions of law de novo, with no deference to trial courts." *Id.* at 180-81, 810 S.E.2d at 839.

ANALYSIS

**I. Appellate Counsel**

We hold the PCR court did not err in denying Petitioner's application for PCR based on appellate counsel's failure to raise the specific intent issue on appeal. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984) (holding that in order to establish a claim for ineffective assistance of counsel, a PCR applicant must show: (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.).

Regardless of whether appellate counsel was deficient, we hold the evidence presented supports the PCR court's finding that Petitioner did not establish prejudice. The State presented evidence that Petitioner turned and fired at officers pursuing him, which constituted evidence of specific intent to kill. *See Anderson v. State*, 354 S.C. 431, 434, 581 S.E.2d 834, 835 (2003) ("To prove prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability he would have prevailed on appeal."); *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014) ("When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" (quoting *State v. Kerr*, 330 S.C. 132, 144-45, 498 S.E.2d 212, 218 (Ct.App.1998))). Specifically, Captain Corey stated he saw Petitioner turn around to face the officers before firing, and Deputy Scott testified he saw Petitioner turn around and fire towards him once at the edge of the woods. Deputy Scott also testified he saw Petitioner pointing in Sergeant Sellers's direction when he was firing the gun over his shoulder as he ran. Sergeant Sellers stated he saw Petitioner turn around and fire toward Deputy Scott, although he acknowledged on cross-examination it was dark and he could not be sure which way Petitioner was facing. All the officers testified they heard or saw Petitioner firing a gun while they pursued him. Based on the evidence presented that Petitioner directly aimed and fired the gun at Sergeant Sellers and Deputy Scott, which provided proof of Petitioner's specific intent to kill, we find there was no reasonable probability Petitioner would prevail on appeal. Accordingly, we affirm the PCR court's denial of PCR on this issue.

## II. Trial Counsel

We hold the PCR court did not err in denying Petitioner's PCR application based on trial counsel's failure to object to the trial court's jury instruction that malice could be inferred by the use of a deadly weapon. *See Strickland*, 466 U.S. at 687-88, 694 (holding that in order to establish a claim for ineffective assistance of counsel, a PCR applicant must show: (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.).

Regardless of whether trial counsel was deficient, we hold Petitioner failed to establish he was prejudiced by trial counsel's performance. *See Gibbs v. State*, 403 S.C. 484, 495, 744 S.E.2d 170, 176 (2013) ("In evaluating whether a PCR applicant has suffered prejudice as a result of a jury charge, the jury charge must be viewed 'in its entirety and not in isolation.'" (quoting *Battle v. State*, 382 S.C. 197, 203, 675 S.E.2d 736, 739 (2009))). The trial court properly instructed the jury that malice could be either express or inferred and could be inferred based on a total disregard for human life. *See* § 16-3-29 ("A person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied, commits the offense of attempted murder."); *State v. Wilds*, 355 S.C. 269, 276-77, 584 S.E.2d 138,142 (Ct. App. 2003) ("Implied malice is when circumstances demonstrate a 'wanton or reckless disregard for human life' or 'a reasonably prudent man would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act.'"). The officers at the scene all testified that Petitioner fired a gun—multiple times—in their direction while he ran away from them. Captain Corey and Deputy Scott testified Petitioner turned around and fired at the officers pursuing him. Deputy Scott also testified he saw Petitioner pointing in Sergeant Sellers's direction when he was firing the gun over his shoulder as he ran. Sergeant Sellers stated he saw Petitioner turn around and fire toward Deputy Scott, although he acknowledged on cross-examination it was dark and he could not be sure which way Petitioner was facing. We find the testimony that Petitioner turned around and fired at the officers pursuing him and pointed the gun in Sergeant Sellers's direction when firing over his shoulder shows Petitioner's "wanton or reckless disregard for human life," which established malice beyond a reasonable doubt notwithstanding the erroneous jury instruction. Based on the evidence presented, we hold there is no reasonable probability the outcome would have been different had the trial court not charged that malice could be inferred by the use of a deadly

weapon. *See Middleton*, 407 S.C. at 317, 755 S.E.2d at 435 ("When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" (quoting *Kerr*, 330 S.C. at 144-45, 498 S.E.2d at 218)). Accordingly, we conclude the PCR court did not err in denying Petitioner's application for PCR on this issue.

**AFFIRMED.**

**MCDONALD and VINSON, JJ., and BROMELL HOLMES, A.J., concur.**